UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

JAMES MAYBERRY,

    Plaintiff,

v.

                            CASE NO.:

OPTIMUM OUTCOMES, INC.,

    Defendant.
_____/

## COMPLAINT

1. Plaintiff alleges Optimum Outcomes, Inc. "robo-called" him more than 50 times in stark violation of the Telephone Consumer Protection Act, 47 U.S.C. §227 *et seq*. ("TCPA"), the Florida Consumer Collection Practices Act, Fla. Stat. §559.55 *et seq*. ("FCCPA") and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et. seq.* ("FDCPA").

## INTRODUCTION

2. "Robocalls" are the #1 consumer complaint in America today.

3. The FTC reported over 3.2 million complaints about robocalls in 2014, of which almost half (1,678,433) occurred after the consumer had already requested that the company stop calling. Federal Trade Commission, National Do Not Call Registry Data Book, FY 2014, at 5 (Nov. 2014). Since this report, the number of complaints has increased. Robocalls are very inexpensive to make. As was noted in a Senate hearing on the subject: "With such a cheap and scalable business model, bad actors can blast literally tens of millions of illegal robocalls over the course of a single day at less than 1 cent per minute." Senate Hearing at 5.

4. According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." https://www.fcc.gov/document/fact-sheet-consumer-protection-proposal.

5. The TCPA was enacted to prevent companies like Optimum Outcomes, Inc. from invading American citizens' privacy and prevent illegal robocalls.

6. Congress enacted the TCPA to prevent real harm. Congress found that "automated or pre-recorded calls are a nuisance and an invasion of privacy, regardless of the type of call" and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243, §§ 2(10-13) (Dec. 20, 1991), codified at 47 U.S.C. § 227; see also *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012) ("The Act bans certain practices invasive of privacy").

7. "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

8. According to findings by the Federal Communication Commission ("FCC")—the agency Congress vested with authority to issue regulations implementing the TCPA—such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and

inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

## JURISDICTION AND VENUE

9. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. §1331.

10. The alleged violations described in the Complaint occurred in Newberry, FL.

## FACTUAL ALLEGATIONS

11. Plaintiff is a natural person, and citizen of the State of Florida, residing in Newberry, FL.

12. Plaintiff is a "consumer" as defined in Florida Statute 559.55(8) and 15 U.S.C. § 1692(a)(3).

13. Plaintiff is an "alleged debtor."

14. Plaintiff is the "called party." *See Breslow v. Wells Fargo Bank, N.A.,* 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.,* 746 F. 3d 1242 (11th Cir. 2014).

15. Defendant, is a corporation which was formed in Illinois with its principal place of business at 2651 Warrenville Road, Suite 500, Downers Grove, IL 60515, and conducting business in the state of FL through its registered agent, Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301-2525.

16. Defendant is a "debt collector" as defined by Florida Statute § 559.55(7) and 15 U.S.C. § 1692(a)(6).

17. The debt that is the subject matter of this complaint is a "consumer debt" as defined by Florida Statute §559.55(6) and U.S.C. § 1692(a)(5).

18. Defendant intentionally harassed and abused Plaintiff on numerous occasions by calling several times during one day, and on back to back days, with such a frequency as can be reasonably expected to harass.

19. Defendant attempted to collect a debt from the Plaintiff by this campaign of telephone calls.

20. Plaintiff does not owe the debt Defendant is attempting to collect.

21. Each call the Defendant made to the Plaintiff was made using an ATDS which has the capacity to store or produce telephone numbers to be called, without human intervention, using a random or sequential number generator; and to dial such numbers as specified by 47 U.S.C §227(a)(1).

22. Furthermore, upon information and belief, each of the calls at issue were placed by the Defendant using a "prerecorded voice," as specified by the TCPA, 47 U.S.C. § 227 (b)(1)(A).

23. Defendant has stipulated in another lawsuit that the telephone system used to call the Plaintiff was in fact an ATDS.

24. None of Defendant's telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

25. Plaintiff is the regular user and carrier of the cellular telephone numbers at issue, (352) 316-3789.

26. Plaintiff never provided his aforementioned cellular telephone numbers to the Defendant.

27. In or about August of 2016, Plaintiff received a telephone call to his aforementioned cellular telephone number from Defendant seeking to recover a debt. Upon receipt of the calls

from Defendant, Plaintiff's caller ID identified the calls were being initiated from, but not limited to, the following phone number: (877) 795-9819.

28. Immediately upon receipt of the calls, in or about August of 2016 due to a ceaseless barrage of daily calls, Plaintiff answered a call from Defendant and informed an agent/representative of the Defendant that their incessant calls were harassing him and demanded that Defendant cease placing calls to his aforementioned cellular telephone number.

29. In or about August of 2016, during the aforementioned phone conversation with Defendant's agent/representative, Plaintiff expressly revoked any express consent Defendant may have mistakenly believed it had for placement of telephone calls to Plaintiff's aforementioned cellular telephone numbers by the use of an ATDS or a pre-recorded or artificial voice.

30. Each subsequent call Defendant made to the Plaintiff's aforementioned cellular telephone numbers was done so without the "express permission" of the Plaintiff.

31. Additionally, in or about September of 2016, Plaintiff answered a call from the Defendant, explained that he has told them to stop calling before, and again demanded that Defendant stop calling his aforementioned cellular telephone number.

32. Each of Plaintiff's conversations with the Defendant demanding an end to the harassment were ignored.

33. Defendant has recorded at least one conversation with the Plaintiff

34. Defendant has recorded numerous conversations with the Plaintiff.

35. Despite actual knowledge of their wrongdoing, and that they did not have Plaintiff's consent, the Defendant continued its barrage of phone calls to Plaintiff's aforementioned cellular telephone numbers in an attempt to collect a debt.

36. Defendant made at least one call to (352) 316-3789 using an "automatic telephone dialing system" (ATDS).

37. Defendant made at least twenty-five (25) calls to (352) 316-3789 using an ATDS.

38. Defendant made at least fifty (50) calls to (352) 316-3789 using an ATDS.

39. Each call the Defendant made to the Plaintiff in the last four years was made using an ATDS.

40. From about August of 2016 through the filing of this Complaint, Defendant placed approximately fifty (50) automated calls to Plaintiff's aforementioned cellular telephone (or as will be established after a thorough review of Defendant's records), despite the Plaintiff revoking any consent Defendant may have mistakenly believed it had to place calls to his aforementioned cellular telephone number.

41. By effectuating these unlawful phone calls, Defendant has caused the Plaintiff the very harm that Congress sought to prevent—namely, a "nuisance and invasion of privacy."

42. Defendant's aggravating and annoying phone calls trespassed upon and interfered with Plaintiff's rights and interests in his cellular telephone and cellular telephone line, by intruding upon Plaintiff's seclusion.

43. Defendant's phone calls harmed Plaintiff by wasting his time.

44. Moreover, "wireless customers [like Plaintiff] are charged for incoming calls whether they pay in advance or after the minutes are used." In re: Rules Implementing the TCPA of 1991, 23 FCC Rcd 559, 562 (2007). Defendant's phone calls harmed Plaintiff by depleting the battery life on his cellular telephone, and by using minutes allocated to Plaintiff by his cellular telephone service provider.

45. Defendant's corporate policy and procedures is structured as to continue to call individuals like the Plaintiff, despite these individuals revoking any consent the Defendant may have had.

46. Defendant's, corporate policy and procedures provided no means for the Plaintiff to have his aforementioned cellular numbers removed from the call list.

47. Defendant has a corporate policy of using an ATDS or a prerecorded or artificial voice message to collect debts from individuals such as Plaintiff for its financial benefit.

48. Plaintiff expressly revoked any consent Defendants may have mistakenly believed they had for placement of telephone calls to Plaintiff's aforementioned cellular telephone by the use of an ATDS or a pre-recorded or artificial voice immediately upon Defendants' placement of the calls.

49. Defendant violated the TCPA with respect to the Plaintiff.

50. Defendant willfully or knowingly violated the TCPA with respect to the Plaintiff.

## COUNT I
### (Violation of the TCPA)

51. Plaintiff incorporates Paragraphs one (1) through fifty (50).

52. Defendant caused placement of non-emergency telephone calls to Plaintiff's cellular telephone using an ATDS or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

53. Defendant willfully and knowingly caused placement of non-emergency telephone calls to Plaintiff's cellular telephone using an ATDS or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages and any other such relief the court may deem just and proper.

## COUNT II
### (Violation of the FCCPA)

54. Plaintiff incorporates Paragraphs one (1) through fifty (50).

55. At all times relevant to this action Defendant is subject to and must abide by the law of Florida, including Florida Statute § 559.72.

56. Defendant has violated Florida Statute §559.72(7) by willfully communicating with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family.

57. Defendant has violated Florida Statute §559.72(7) by willfully engaging in conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family.

58. Defendant has violated Florida Statute §559.72(9) by attempting to enforce a debt when Defendant knows that the debt is not legitimate or assert the existence of some legal right when Defendant knows that right does not exist.

59. Defendant's actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Florida Statute §559.77.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages, costs, interest, attorney fees and any other such relief the court may deem just and proper.

## COUNT III
### (Violation of the FDCPA)

60. Plaintiff incorporates Paragraphs one (1) through fifty (50).

61. At all times relevant to this action, Defendant is subject to and must abide by 15 U.S.C. § 1692 et seq.

62. Defendant engaged in an act or omission prohibited under 15 U.S.C. § 1692(d) by willfully engaging in conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

63. Defendant engaged in an act or omission prohibited under 15 U.S.C. § 1692(d)(5) by causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

64. Defendant engaged in an act or omission prohibited under 15 U.S.C. § 1692(f) by using unfair and unconscionable means to collect or attempt to collect any debt.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against for statutory damages, punitive damages, actual damages, costs, interest, attorney fees and any other such relief the court may deem just and proper.

Respectfully submitted,

*s/Amanda J. Allen*
**Amanda J. Allen, Esquire**
Florida Bar No. 98228
Amanda@TheConsumerProtectionFirm.com
William "Billy" Peerce Howard, Esquire
Florida Bar No. 0103330
Billy@TheConsumerProtectionFirm.com
The Consumer Protection Firm, PLLC
210-A South MacDill Avenue
Tampa, FL 33609
Tele:  (813) 500-1500
Fax:  (813) 435-2369
*Attorney for Plaintiff*